### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF OKLAHOMA

DAVID ARNDT,                            )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )          **Case No. CV-20-181-R**
                                        )
BARBARA HATFIELD, individually, et al., )
                                        )
        Defendants.                     )

### <u>ORDER</u>

Before the Court is Plaintiff's Second Amended Complaint (Doc. No. 59) filed by Plaintiff in response to the Court's Order dated June 2, 2020, wherein it struck his Amended Complaint (Doc. No. 51).[1] The Court has considered Plaintiff's newest submission in conjunction with the requirements set forth in 28 U.S.C. § 1915(e) in light of his *in forma pauperis* status and finds as follows.

This Court has the discretion to dismiss an *in forma pauperis* complaint *sua sponte* under § 1915(e)(2) "at any time" if the action "is frivolous or malicious; [or] fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2). This provision applies to actions filed by prisoners and nonprisoners, such as Plaintiff. *See Judy v. Obama*, 601 F. App'x 620, 621 (10th Cir. 2015). The Court also may dismiss a complaint *sua sponte* under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing

---

[1] Plaintiff filed his original complaint on February 28, 2020, followed by an amended complaint on March 17, 2020. The instant pleading represents Plaintiff's third attempt, but it is the Second Amended Complaint.

him an opportunity to amend his complaint would be futile." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991)(quoting *McKinney v. Okla. Dep't of Human Servs.*, 925 F.2d 363, 365 (10th Cir. 1991)). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Twombly").

The Court liberally construes a *pro se* complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded factual allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir.2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Twombly*, 550 U.S. at 558. A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall,* 935 F.2d at 1110. The complaint must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Its "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570. The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir.1997).

The Court notes that in the context of a civil rights complaint specificity in pleading is essential. A complaint must clearly state what each defendant--typically, a named government employee--did to violate Plaintiff's civil rights. *See Bennett v. Passic*, 545 F.2d

1260, 1262-63 (10th Cir. 1976) (stating personal participation of each named defendant is essential allegation in civil-rights action). "To state a claim, a complaint must 'make clear exactly who is alleged to have done what to whom.'" *Stone v. Albert*, 338 F. App'x 757, 759 (10th Cir. 2009) (emphasis in original) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)).

Plaintiff filed this action asserting that he has been victimized by a state legal system that is inequitable to men in the context of divorce and family law issues. Unhappy with the proceedings or the results in an apparently contentious divorce in which Plaintiff alleged he was the victim of domestic violence by his now ex-wife, Mr. Arndt seeks relief from this Court. At bottom, the eighty-eight-page Second Amended Complaint is a laundry list of grievances about the legal system in Oklahoma, the particulars of Plaintiff's personal situation, and a list of complaints that Plaintiff demands state officials address. In the Second Amended Complaint, Plaintiff identifies seven claims and thirty-three named Defendants.[2] The Defendants can be categorized for purposes of construing the pleading: (1) Judges of the District Court of Canadian County—Defendants Hatfield, McCurdy, Hesse, and Hughey; (2) state legislators—Defendants McCall, Treat, Echols, Stark, Lawson, West, Dahm, Brewer, Baker, and Paxton; (3) DHS officials and employees— Defendants Brown, Dillard, Berry, Monte, Mallam, Flores, and Davis; (4) private attorneys involved in the divorce proceedings—David Halley, Jeramy Jarman, and Mark Hixson— as well as Halley's secretary, Candice Shultz; and (5) the Canadian County District

---

[2] Defendants are numbered 1-20 and 22-34, Plaintiff apparently having mis-numbered the parties.

Attorney, Defendant Fields, and one of his assistants, Defendant Kemp. The remaining Defendants do not fit neatly into these categories: (1) Mike Hunter, Attorney General; (2) Governor Kevin Stitt; (3) Marie Hirst,[3] Canadian County Court Clerk; (4) Taylor Henderson, Director of the Counsel on Judicial Complaints; (5) the chief executive of the YWCAOKC, Janet Peery; and (6) the Executive Director of Legal Aid Services of Oklahoma, Inc., Michael Figgins. The claims Plaintiff identifies are:  Claim One—Unequal Services to Men as to Women (Second Amended Complaint ¶ 69); Claim Two—Failure to Protect[4] (Second Amended Complaint ¶ 94); Claim Three—Best Interest of the Children is Not being Considering and Punishing Protective Parents (Second Amended Complaint ¶ 116); Claim Four—Fraud (Second Amended Complaint ¶ 139); Claim Five—Constitutional Violations of Due Process and Right to be heard (Second Amended Complaint ¶ 213); Claim Six—Constitutional Violations of Failing to Address Remonstrance/Failure to Act/Failure to Perform Duty, Violation of Oath of Office (Second Amended Complaint ¶ 262); and Claim Seven—Failure to Allow Me to File Paupers Affidavit and Failure to Provide Court Reporter  (Second Amended Complaint ¶ 317). As the Second Amended Complaint includes no particular prayer for relief, in contravention of the requirements of Rule 8(a)(3), it is unclear whether Plaintiff seeks damages,

---

[3] Plaintiff refers to "Maria Hurst" as the Court Clerk of Canadian County.  However, her correct name is Marie Hirst, and she will be referred to by that name in this Order.

[4] Plaintiff 's claims are generally difficult to construe; however, the Court has particular difficultly construing Plaintiff's Failure to Protect Claim. The allegations indicate at the outset that the State failed to protect Mr. Arndt and his children but also indicate that parents may be charged with failing to protect their children from an abusive spouse or partner. *See e.g.* Second Amended Complaint, ¶ 95 ("But because Oklahoma's child protection laws do not differentiate between abusive and non-abusive parents, many non-abusive parents face longer sentences than those who have perpetrated the abuse."), ¶ 111 ("So it was to my surprise and demise that I was later served with official criminal charges that I failed to protect the children against the mother's abuse.").

declaratory relief, and/or injunctive relief from any particular defendant, each of whom is sued in both their official and individual capacity.

Plaintiff's Second Amended Complaint is approximately half the size of his Amended Complaint. He asserts in the initial paragraphs of the Second Amended Complaint a belief the Court will find he has cut too much fat and that his Second Amended Complaint fails to state a claim.[5] The Court finds, however, that the problems with Plaintiff's Second Amended Complaint are more fundamental, despite two prior attempts at pleading Mr. Arndt's filing still fails to comply with Federal Rule of Civil Procedure 8(a) and 8(d), as well as Rule 10(b), deficiencies identified in the Court's June 2, 2020 Order. (Doc. No. 51).

Plaintiff cites federal question jurisdiction under 28 U.S.C. § 1331 and civil rights jurisdiction under 28 U.S.C. § 1343. The specific statutes upon which he premises his claims are 42 U.S.C. § 1983, 42 U.S.C. § 12131, *et seq.*, 29 U.S.C. § 794, *et seq.*, 28 U.S.C. § 1943, *et seq.,* and 18 U.S.C. § 1621.[6] At the outset, the Court concludes that Plaintiff has failed to state a claim under 42 U.S.C. § 12131. Section 12131 is a definition section of the

---

[5] Large portions of Plaintiff's Second Amended Complaint are devoted to legal arguments, historical references or rhetorical questions. A complaint, however, should be limited to factual allegations. The inclusion of case citations and discussions of facts of other cases is unnecessary and unhelpful to the Court's ability to construe the factual sufficiency of the allegations relevant to Plaintiff's claims. (*See e.g.,* Second Amended Complaint ¶¶ 317-320, 322, 324-27).

[6] There is no 28 U.S.C. § 1943 and therefore this section does not support a claim. Further. Plaintiff cannot rely on 18 U.S.C. § 1621—a statute that criminalizes perjury—as the basis for a civil claim. *See generally Diamond v. Charles*, 476 U.S. 54, 64–65 (1986) (holding that private citizens cannot compel enforcement of criminal law); *See GwanJun Kim v. Grand Valley State Univ.*, 2017 WL 8294004, at *1 (6th Cir. Dec. 22, 2017) ("18 U.S.C. § 1621 ... does not create a private right of action."); *Fuller v. Unknown Officials from the Justice Dep't Crime Div.*, 387 F. App'x 3, 4 (D.C. Cir. 2010) ("[T]here is no private cause of action for perjury, 18 U.S.C. § 1621 ...."); *Roemer v. Crow*, 993 F.Supp. 834, 837 (D. Kan. 1998) (18 U.S.C. § 1621 is a criminal statute that does not provide a civil right of action for damages); *Weiland v. Byrne*, 392 F.Supp. 21, 22 (N.D. Ill. 1975) (plaintiff has no standing to sue under 18 U.S.C. § 1621). Furthermore, Plaintiff cannot use the statute as a predicate for a federal civil rights action under 42 U.S.C. § 1983. *See Dugar v. Coughlin*, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985).

Americans with Disabilities Act, as it applies to public services. Section 12132 provides, "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Although Plaintiff cites this section, his allegations regarding disability discrimination are conclusory, at best. "Establishment and enforcement tactics used have discriminated against me on the basis of my gender and disabilities, the court has systematically deprived Petitioner of his civil rights during the divorce, DHS hearings, child custody and contempt hearings." (Doc. No. 59, ¶ 16). Plaintiff makes no other reference to any alleged disabilities, nor does he identify a particular defendant to any such claim. Plaintiff's reliance on 29 U.S.C. § 794, part of the Rehabilitation Act, is misplaced for the same reasons. The Court turns to 42 U.S.C. § 1983, the only remaining basis for federal question jurisdiction set forth in Plaintiff's jurisdictional statement.

42 U.S.C. § 1983 is the vehicle by which a person seeks relief for violation of rights secured by the Constitution and laws of the United States. To state a claim under § 1983, a plaintiff must allege the violation of a right so secured and further must allege that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48–49 (1988); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).

Because Plaintiff must allege that a defendant was acting under color of state law to support a § 1983 claim, the Court finds Plaintiff has failed to state a claim against certain Defendants. Defendant Halley represented Plaintiff's ex-wife in their divorce proceedings

6

and Defendant Candice Shultz is his legal secretary. Jeramy Jarman served as Plaintiff's divorce counsel for at least a portion of those proceedings, and Mark Hixson was appointed by Judge Hatfield to represent Mr. Arndt in contempt proceedings related to his divorce. It is well established that neither private attorneys nor public defenders act under color of state law for purposes of § 1983 when performing their traditional functions as counsel. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Barnard v. Young*, 720 F.2d 1188, 1189 (10th Cir. 1983); *see also Ellibee v. Hazlett*, 122 F. App'x 932, 934 (10th Cir. 2004). Similarly, there is no basis for concluding Defendant Shultz was a state actor. Accordingly, Defendants Halley, Shultz, Jarman and Hixson are entitled to dismissal of the claims against them.[7]

Similarly, Plaintiff's claims against YWCAOKC, and its executive director, Janet Peery are subject to dismissal.[8] Plaintiff alleges that, although the YWCA concluded he was the victim of domestic violence,  he was informed the Association did not have classes for male victims. (Doc. No. 59, ¶ 78).  He contends his caseworker was to return his call but failed to do so. The Court finds no basis in Plaintiff's allegations from which it can conclude that either the YWCA or Ms. Peery is a state actor and therefore, both are entitled to dismissal of Plaintiff's 42 U.S.C. § 1983 claim.

---

[7] Plaintiff's Second Amended Complaint includes vague allegations of a conspiracy. Although  a private actor who conspires with a judge to deprive someone of a constitutional right can be acting under color of state law, *see Dennis v. Sparks,* 449 U.S. 24, 28–29 (1980), a plaintiff pursuing such a theory of liability must rely on something more than conclusory allegations to state such a cause of action. *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Plaintiff's allegations against the private parties are not sufficient to allege a conspiracy to violate Plaintiff's civil rights. *Olson v. Carmack,* 641 F. App'x 822, 827 (10th Cir. 2016).

[8]  It is unclear from Plaintiff's Second Amended Complaint whether he seeks to sue the YWCAOKC or Ms. Peery. Ms. Peery's name appears only in the caption of the Second Amended Complaint.

Similarly, Legal Aid Services of Oklahoma, Inc, and Michael Figgins, are not state actors.

> I was even appointed an attorney from Legal Aid Service of Oklahoma, Inc. I was appointed an attorney because of my low income and the fact that I was a victim of domestic violence. I was represented in court one time by legal Aid, and then the attorney found employment some where (sic) else and he had to withdraw. I talked to legal Aid and they promised me another attorney, but then later changed their minds and claimed they had no one else to assig (sic) me. This left me, a domestic violence victim, fighting for myself, alone. Legal Aid has helped many women, how many women do they agree to help, and then get them to court, and then just leave them hanging to fight an uphill battle with no resources.

Second Amended Complaint ¶ 93. Legal Aid Services of Oklahoma, Inc. is a private entity. S*ee Schnabel v. Abramson,* 232 F.3d 83, 87 (2d Cir. 2000) (holding that legal aid organization ordinarily is not a state actor for purposes of § 1983); *Yoast v. Pottstown Borough*, 437 F.Supp.3d 403 (E.D. Pa. 2020)(same). Accordingly, Legal Aid Services of Oklahoma is not subject to liability under § 1983 and is hereby dismissed.

The remaining Defendants are arguably state actors, sued in both their official and individual capacities. The Court will address the official capacity claims first. To the extent Plaintiff seeks damages, his claims against the state officials in their official capacities are barred by the Eleventh Amendment. Under the Eleventh Amendment, states are generally immune from suit and a suit against a state official "is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

> States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity. This prohibition encompasses suits against state agencies [and] [s]uits against state officials acting in their official capacities.

*Collins v. Daniels*, 916 F.3d 1302, 1315 (10th Cir. 2019) (internal quotations and citations omitted).

In Oklahoma, judges of the district court are considered arms of the State, entitled to Eleventh Amendment immunity.

> "As a general matter, state courts are considered arms of the state*." Large v. Beckham Cnty. Dist. Ct.*, 2014 WL 235477, at *3 (W.D. Okla. Jan. 22, 2014) (quoting 13 Charles A. Wright et al., Federal Practice & Procedure § 3524.2, at 324-25 (3d ed. 2008)); *see, e.g., Lewis v. Mikesic*, 195 F. App'x 709, 710 (10th Cir. 2006) (Kansas probate judge in his official capacity is not a "person[ ] against whom a claim for damages can be brought pursuant to § 1983"); *Harris v. Champion*, 51 F.3d 901, 906 (10th Cir. 1995) ("[T]his and other circuit courts have held that a state court is not a 'person' under § 1983."), superseded by statute on other grounds*; Heffington v. Dist. Ct. of Sedgwick Cnty.*, 2005 WL 1421530, at *5 (D. Kan. Jun. 17, 2005) (Sedgwick County, Kansas District Court is not a person under Section 1983).

*Craker v. Tanner*, No. CIV-18-305-JHP-SPS, 2019 WL 3046100, *2 (E.D. Okla. July 11, 2019). Accordingly, Plaintiff's official capacity claims for damages against Defendants Hatfield, McCurdy, Hesse, and Hughey are dismissed.

Similarly, the District Attorney, Defendant Fields, and his assistant, Justin Kemp, in their official capacities, are not persons for purposes of § 1983. Under Oklahoma law, a district attorney is an arm of the state and is entitled to Eleventh Amendment immunity from actions against him in his official capacity. *Erikson v. Pawnee County Bd. Of County Comm'rs*, 263 F.3d 1151, 1153–54 (10th Cir. 2001); *see also Souiri v. Oklahoma*, No. 17-CV-257-JED, 2017 WL 2260676, at *3 (N.D. Okla. May 23, 2017). Finally, Defendant Hirst, in her official capacity, is also an arm of the state for purposes of § 1983 and cannot be sued for damages. Finally, the following Defendants in their official capacities are clearly arms of the state and entitled to dismissal from Plaintiff's claims to the extent he

seeks damages: Attorney General Mike Hunter, Governor Kevin Stitt, legislative Defendants—McCall, Treat, Echols, Stark, Lawson, West, Dahm, Brewer, Baker, and Paxton, and the Department of Human Services ("DHS") Defendants—Justin Brown, Director, attorneys Stacey Dillard, and Angela Berry, and employees Tiffany Monte, Shannon Mallam, Carmen Flores, and Jason Davis. Accordingly, Plaintiff's official capacity claims are dismissed to the extent he seeks damages.

To the extent Plaintiff seeks declaratory relief from the state actor Defendants in their official capacities, the Court reads his Second Amended Complaint as alleging that these Defendants, in the past, violated his constitutional rights. The Supreme Court has recognized an exception to the Eleventh Amendment where a plaintiff seeks prospective enforcement of his or her federal rights. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908). However *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past." *Buchwald v. Univ. of New Mexico School of Med.*, 159 F.3d 487, 495 (10th Cir. 1998)(citations omitted). Accordingly, to the extent Plaintiff seeks such a declaration his claims would be barred by the Eleventh Amendment. *See Johns v. Stewart*, 57 F.3d 1544, 1553 (10t Cir. 1995)("The Eleventh Amendment does not permit judgments against state officers declaring that they violated federal law in the past.")(citations and internal quotation marks omitted).

Finally, the Court finds that Plaintiff has not sufficiently pled facts that would permit him to seek prospective relief, because he fails to allege that he is "suffering a continuing injury or be under a real and immediate threat of being injured in the future." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004). A simple claim for a future injury

constitutes mere speculation or conjecture and does not warrant invocation of jurisdiction.

*See O'Shea v. Littleton*, 414 U.S. 488, 497 (1974); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("The speculative nature of [plaintiff's] claim of future injury requires a finding that this prerequisite of equitable relief has not been fulfilled."). Additionally, to the extent Plaintiff is challenging the state court judgment in his divorce,

> [t]he *Rooker-Feldman* doctrine...provides that only the Supreme Court has jurisdiction to hear appeals from final state court judgments*." Mayotte v. U.S. Bank Nat'l Ass'n for Structured Asset Inv. Loan Tr. Mortg. Pass-Through Certificates, Series 2006-4*, 880 F.3d 1169, 1173 (10th Cir. 2018) (quoting *Bear v. Patton*, 451 F.3d 639, 641 (10th Cir. 2006)). A federal district court is precluded from exercising subject-matter jurisdiction to hear litigation in which "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Id*. at 1174 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 291 (2005)) (emphasis in original). Essentially, "...barred claims are those complaining of injuries caused by state-court judgments. In other words, an element of the claim must be that the state court wrongfully entered its judgment." *Id.* (quoting *Campbell v. City of Spencer*, 682 F.3d 1278, 1280 (10th Cir. 2012)).

*Kirchner v. Marshall*, No. 20-CV-00114-MEH, 2020 WL 4582714, at *10 (D. Colo. Aug. 10, 2020).

To the extent Plaintiff seeks relief from the state actors in their individual capacities, the claims are also subject to dismissal on a variety of grounds -- some Defendants are entitled to absolute immunity, claims against others have not been specifically pled, and with regard to others the allegations simply do not support the theory that the Defendant violated Plaintiff's constitutional rights. At the outset, the Court notes that to the extent Plaintiff seeks injunctive relief against any of the state actor Defendants in his or her individual capacity, the claim must be dismissed. Injunctions are available under § 1983

only against public entities and public officers sued in their official capacities. *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011). Furthermore, Plaintiff is not entitled to declaratory relief against any of the state actor Defendants in his or her individual capacity. Having failed to specifically request any type of relief, the Second Amended Complaint does not provide a basis from which the Court could conclude what type of declaratory relief Plaintiff anticipates. "A declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act." *See Lawrence v. Kuenhold*, 271 F. App'x 763, *3 (10th Cir. Mar. 27, 2008).

The § 1983 claims against Defendant Judges Barbara Hatfield, Bob Hughey, Jack McCurdy, and Paul Hesse must be dismissed because these state judges are protected from liability by absolute judicial immunity. A judge is absolutely immune from a civil rights suit based on actions taken in a judicial capacity, unless he or she acted in the clear absence of all jurisdiction. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978); *Hunt v. Bennett*, 17 F.3d 1263, 1266-67 (10th Cir. 1994). Judicial immunity "is not overcome by allegations of bad faith or malice," *Mireles*, 502 U.S. at 11, or an assertion that the judge acted in error or exceeded his or her authority, *see Stump*, 435 U.S. at 356-57. Further, a judge acts in the clear absence of all jurisdiction only when she or he "acts clearly without any colorable claim of jurisdiction." *Snell v. Tunnell*, 920 F.2d 673, 686 (10th Cir.1990); *Dunn v. Harper Cty.*, 520 F. App'x 723, 725 (10th Cir. 2013) ("the [state court] judge, court clerks, and prosecutor are all entitled to absolute immunity under well-established precedent from the Supreme Court and this court") (*citing Harlow*

12

*v. Fitzgerald*, 457 U.S. 800, 807 (1982) (absolute immunity for judges acting in their judicial capacity)).

The allegations against Judge Hatfield arise from her role as presiding judge over Plaintiff's divorce and custody proceedings, as well as a case brought by the Department of Human Services, both of which are within the judicial process. There are no nonconclusory allegations that Judge Hatfield acted "without any colorable claim of jurisdiction." Similarly, the allegations against Judge Hughey fail to argue the absence of jurisdiction. Plaintiff complains that Judge Hughey transferred a DHS proceeding to Judge Hatfield, who was handling his divorce action, creating a conflict of interest. Nothing in these allegations provides a basis for overcoming immunity. Finally, Judges McCurdy and Hesse are named because they are allegedly the "top judges in this county" and therefore allegedly complicit with the wrongdoings of the other two judicial defendants. (Doc. No. 59, ¶ 30). Plaintiff's allegations are insufficient to state a claim in light of the judicial immunity to which each of these judges is entitled.

Defendants Fields, the District Attorney for Canadian County, and his assistant, Justin Kemp, are similarly entitled to absolute immunity to any § 1983 individual capacity claim seeking damages. Plaintiff alleges: "Michael Fields and Justin Kemp are the DA and the ADA who filed and purs[u]ed charges of "failure to protect" at the recommendation of DHS." (Second Amended Complaint, ¶ 30). This is the only reference to either of these defendants by name in the body of the Second Amended Complaint, although there are oblique references to the DA's office in paragraphs 52, 53, 106, 114, and 187. Prosecutors, like judges, enjoy absolute judicial immunity. *See Imbler v. Pachtman*, 424 U.S. 409, 430

(1976) (prosecutors during the "judicial phase of the criminal process" enjoy absolute immunity); Plaintiff offers no allegations of extra-official behavior. His bald assertions are insufficient to strip these defendants of absolute immunity.

Defendant Hirst is entitled to this same immunity, because her role as court clerk forms an integral part of the judicial process. *See Henriksen v. Bentley*, 644 F.2d 852, 855 (10th Cir. 1981) (recognizing that "clerks of court have been ruled immune to suit under [§] 1983 when performing 'quasi-judicial' duties"); *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1247 (10th Cir. 2007) (holding that Clerk of the Supreme Court was immune from suit for his alleged failure to transmit a document to the Court because "here the Clerk is being asked to perform a judicial function delegated by the Supreme Court—the filing of an application," and clerks are entitled to judicial immunity when performing such judicial functions);.*Guiden v. Morrow*, 92 F. App'x 663 (10th Cir.2004)(State prisoner's § 1983 claim based on a court clerk's alleged breach of duty in failing to file court documents was properly dismissed during screening pursuant to 28 U.S.C. § 1915A because the clerk was entitled to immunity).  Defendant Hirst is thus entitled to absolute immunity for her alleged failure to provide Mr. Arndt with a court reporter or the requested pauper's affidavit, even if her "inaction amounted to grave procedural error." *Fishinghawk v. Kissinger*, 764 F. App'x 827, 828 (10th Cir. 2019).

Plaintiff complains that the various Oklahoma legislators failed to respond to his inquiries regarding the absence of services for male victims of domestic violence or failed to provide responses to his requests that they meet. "The Legislators that were named in this lawsuit (McCall, Treat, Echols, Stark, Lawson, West, Dahm, Brewer, Baker and

Paxton) all either agreed to meet with me, meet briefly with me and promised follow-up, or in the case of my personal elected House and Senate Members (Baker and Paxton), Blatantly refusing to meet with or call me. The remonstrance was filed with Speaker of the House McCall and President Pro-Tempe [sic] of the Senate Treat." (Second Amended Complaint, ¶ 265). To the extent Plaintiff seeks damages because individual legislators failed to meet with him or to advocate for legislative changes, his claims fail to state a claim under § 1983.[9]

Plaintiff has failed to state cognizable constitutional claims against Defendants Mike Hunter and Kevin Stitt, because there is no constitutional guarantee that an elected official will respond to inquiries made by a member of the public.

> I even made MULTIPLE complaints the Attorney General Mike Hunter. Hunter Has refused to acknowledge or address my multiple complaint. His office has promised numerous return calls, but they fail to do so. The attorneys Generals Office is responsible for ensuring that victims rights are not violated, but his office refuses to take or look at complaints concerning this matter.

Doc. No. 39, ¶ 267. "Official complaints to the Attorney General's office are either forgotten or overlooked and I have received no response on my complaint other than that it was received." *Id.* ¶ 268.

Certain of Plaintiff's allegations are insufficient to state a claim because Plaintiff fails to allege personal participation by the named Defendant. *Vasquez v. Davis*, 882 F.3d

---

[9] "[S]tate and regional legislators are entitled to absolute immunity from civil liability under § 1983 for their legislative activities." *Bogan v. Scott–Harris*, 523 U.S. 44, 49 (1998). "Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" Id. at 54 (citation omitted). To the extent Plaintiff seeks damages because any of the legislators allegedly failed to support legislation supportive of male victims of domestic violence, the legislative defendants would be entitled to immunity.

1270, 1275 (10th Cir. 2018. Plaintiff makes no allegations against Defendant Brown, Director of DHS personally; his name appears only in the caption of the Second Amended Complaint. Accordingly, Defendant Brown is entitled to dismissal of the claims against him in his individual capacity. The same is true for Defendant Berry, whose name appears only in the caption of the Second Amended Complaint; she too is entitled to dismissal of Plaintiff's individual capacity claims against her. Defendants Monte, Mallam, Flores, Davis are similarly situated, named only in the caption of the Second Amended Complaint and therefore entitled to dismissal. Thus, those persons are entitled to dismissal of the § 1983 claim against them in their individual capacities.

Plaintiff makes a more specific allegation against Defendant Dillard, an attorney for DHS, asserting that she "testified without being sworn in and testified in the back of the court room that my wages ought to be garnished because I filed a federal lawsuit, and because I filed a federal lawsuit against her and the judge this is proof that I am unwilling to comply with the judges orders and the reason for this is because of my lawsuit." (Second Amended Complaint, ¶ 258). This singular allegation provides an insufficient basis for concluding that Defendant Dillard violated Plaintiff's rights and she is entitled to dismissal of Plaintiff's § 1983 claim.

Although the Court has addressed the Defendants and the allegations against each in the Second Amended Complaint, out of an abundance of caution the Court turns to the allegations in each of his numbered claims. Plaintiff's Claim One is in essence a claim of gender discrimination asserting that the State of Oklahoma refuses to recognize that men can be the victims of domestic violence. The allegations in Claim One include Mr. Arndt's

alleged experiences intertwined with policy statements regarding the need for more services for male victims of domestic violence. The allegations, however, fail to state a claim against any Defendant that survives the analysis set forth above. Claim One is therefore dismissed.

Plaintiff identifies Claim Two as a Failure to Protect claim, asserting that the State did not protect him or his children and that unidentified persons misapplied the law to their detriment. Plaintiff fails to present sufficient facts to state a claim for the violation of his constitutional rights.[10] Claim Two, like Claim One, contains a laundry list of complaints about how Oklahoma addresses allegations of abuse and neglect in children. The broad-based policy statements and rhetorical questions contained in the Second Amended Complaint, however, do not state a claim.[11]

Similarly, Claim Three does not state a claim; therein Plaintiff complains about the actions of the District Court of Canadian County in assessing custody in his divorce proceeding, asserting the court failed to follow the dictates of Oklahoma law regarding custody and allegations of domestic violence. "The *Rooker-Feldman* doctrine...provides that only the Supreme Court has jurisdiction to hear appeals from final state court judgments." *Mayotte v. U.S. Bank Nat'l Ass'n for Structured Asset Inv. Loan Tr. Mortg. Pass-Through Certificates, Series 2006-4*, 880 F.3d 1169, 1173 (10th Cir. 2018) (quoting

---

[10]  Plaintiff references the rights of his children, but he does not purport to proceed on behalf of his children in this case. (*See e.g. ¶ 115*). Accordingly, the Court considers only whether Mr. Arndt has stated a claim for violation of his constitutional rights.

[11]  The Court's prior Orders struck Plaintiff's pleadings because they failed to comply with Federal Rule of Civil Procedure 8(a). Although Plaintiff has reduced the size of his Complaint from 189 to 88 pages, he fails to focus on actual factual allegations. Defendants would find it impossible to respond appropriately to the 322 numbered paragraphs.

*Bear v. Patton*, 451 F.3d 639, 641 (10th Cir. 2006)). A federal district court is precluded from exercising subject-matter jurisdiction to hear litigation in which "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an *injury caused by the state-court judgment* and seeking review and rejection of that judgment." *Id.* at 1174 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)) (emphasis in original). Essentially, "...barred claims are those complaining of injuries caused by state-court judgments. In other words, an element of the claim must be that the state court wrongfully entered its judgment." *Id.* (quoting *Campbell v. City of Spencer*, 682 F.3d 1278, 1280 (10th Cir. 2012)). Additionally, as noted above, the judicial defendants are entitled to absolute judicial immunity. Therefore, Claim Three is subject to dismissal.[12]

Claim Four purports to allege a claim of fraud. Again, it is unclear which Defendant Plaintiff seeks to hold liable for the alleged fraud, which is described within the claim as fraud on the court but ultimately turns to allegations that the court committed fraud. As noted above, the judges are entitled to immunity and this Court is not a super-appellate court to reconsider decisions of the District Court of Canadian County. Additionally, interspersed in Claim Four are allegations that Plaintiff was deprived of marital property and assets via the divorce proceedings and that the trial judge should have been disqualified.[13] The allegations in Claim Four are insufficient to state a claim against any

---

[12] Within Claim Three, Plaintiff alleges that the State's child support guidelines, which are income based, infringe his constitutional rights. Plaintiff, however, has not identified any Defendant to this potential constitutional challenge.

[13] Petitioner also asserts that the court erred in finding him guilty of civil contempt with regard to child support payments.

person identified as a Defendant in this case under 42 U.S.C. § 1983, and accordingly, Claim Four is dismissed.

In Claim Five, Plaintiff asserts denial of his due process and equal protection rights and asserts that an August 8, 2018 hearing in the District Court of Canadian County violated his rights under the First Amendment. (Second Amended Complaint, ¶ 223). The allegations in Claim Five fail because, as set forth above, the judges of the Canadian County District Court are entitled to Eleventh Amendment or judicial immunity and this Court does cannot provide mandamus relief to Petitioner directed to the Oklahoma courts; nor has Plaintiff alleged facts that would support a declaratory judgment. *See Knox v. Bland,* 632 F.3d 1290, 1292 (10th Cir. 2011). Claim Five is therefore dismissed.

Claim Six purports to assert a constitutional violation because certain Defendants allegedly failed to address Plaintiff's remonstrance, failed to act, and failed to perform official duties. Throughout this claim, Plaintiff complains about unanswered inquiries to various state officials, including the Attorney General and the director of the Council on Judicial Complaints. He further contends that he filed a formal Petition of Remonstrance pursuant to Article 2, Section 3 of the Oklahoma Constitution. A claim under 42 U.S.C. § 1983 cannot be premised on the alleged violation of the state constitution, rather § 1983 is the vehicle by which a person seeks relief for violation of rights secured by the Constitution or federal law. "Under 42 U.S.C. § 1983, 'a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States.'" *Hogan v. Winder*, 762 F.3d 1096, 1112 (10th Cir. 2014) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). Accordingly, Claim Six is subject to dismissal.

Finally, Claim Seven appears directed to Defendant Marie Hirst, the Court Clerk of Canadian County. He contends he was denied a court reporter on three occasions, despite having tendered payment for such and further that she refused to provide him a pauperis affidavit for purposes of appeal. (Second Amended Complaint ¶ 321). As set forth above, Defendant Hirst is entitled to immunity and Plaintiff has not alleged facts indicating a declaratory judgment or injunctive relief would be appropriate. Therefore, Claim Seven is subject to dismissal.

Having concluded that all of Plaintiff's claims should be dismissed, the Court notes that this federal court does not "serve as an appellate or reviewing court for alleged illegal actions in state court." *Harris v. Dep't of Corr.*, 426 F. Supp. 350, 351 (W.D. Okla. 1977). Nor can this Court provide mandamus relief to Petitioner directed to the Oklahoma courts. *See Knox v. Bland*, 632 F.3d 1290, 1292 (10th Cir. 2011) ("To the extent that [the plaintiff] is seeking relief in the nature of mandamus, ordering Defendants to take action in their capacities as state judges, '[w]e have no authority to issue such a writ to direct state courts or their judicial officers in the performance of their duties.'") (quoting *Van Sickle v. Holloway*, 791 F.2d 1431, 1436 n.5 (10th Cir. 1986)); *see also, cf., Smith v. United States Ct. of Appeals, Tenth Cir.*, 484 F.3d 1281, 1287 (10th Cir. 2007) ("[W]e decline to recast [the plaintiff's] request for mandamus as a § 1983 claim and we adhere to our general prohibition on issuing a writ of mandamus to a state court judge"). Plaintiff is clearly unhappy with the outcome of his state divorce proceedings, included related contempt proceedings stemming from his child support obligations. His remedy, however, does not lie in this Court via the Second Amended Complaint, which fails to comport with the

requirements of the Federal Rules of Civil Procedure. Accordingly, the Court hereby DISMISSES this action, without prejudice.[14]

      **IT IS SO ORDERED** this 20th day of August 2020.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[14] Although Plaintiff proceeds *pro se* and the Court could grant leave to amend, in light of Plaintiff's three attempts at pleading this case the Court finds dismissal rather than amendment is appropriate.